I'd like to focus my remarks here primarily on the McIntosh issue, which we did the supplemental briefing on, and time permitting the motion to suppress issue. And of course the court has questions on the other issues. And time permits, I'd be happy to take questions.         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I'd be happy to address them. I just start off, at least from my perspective, the McIntosh issue. It seems to me that based upon our case, what you do with a good part of your client's claim depends on whether he was in full compliance with California's medical marijuana regulations. The only way that happens is if we send it back to the district court for a hearing to make that determination. Do you agree with that? Yes. I mean, I think the court could avoid the evidentiary hearing, potentially in this case, based on collateral estoppel, as we've argued. I don't buy that, because there was no— So, yeah, I mean, other than that, I think the only way to resolve this is through an evidentiary hearing, and I do think that's what McIntosh requires. Let me ask you a little bit about that. Here, your client was already convicted and sentenced, right? Yes. No. No, you're not? No. Because the case is still— Because using, at a minimum, and punishing individuals, the phrases in the court opinion, it seems to me the question is still open. Well, it is a little bit different scenario— the DOJ action is prohibited through prosecution. That's the language. So is this appeal part of the prosecution? I would say yes, Your Honor. I mean, traditionally the conviction is not final, for example, for AEDPA purposes or many purposes until the appeal is concluded, and certainly funds continue to be expended in this litigation and in Mr. Kleinman's incarceration. Look at terminology. At the trial, you prosecute. At the appeal, you bring an appeal. And at sentencing, you serve a sentence. So you wouldn't say you're prosecuting a sentence when a guy's in jail. You'd say you're responsible for serving the sentence. On appeal, you don't usually say, I am prosecuting an appeal or I am prosecuting him by an appeal. You say we are defending an appeal or bringing an appeal. The prosecution word ordinarily means trial. Comment. Well, first of all, the word prosecution does not appear in the statute. It doesn't, but it did appear in the interpretation of it. In McIntosh. Yes. Right. But McIntosh was confronted with that issue. I mean, that was what they were addressing. The government had argued that the appropriations writer does not apply to prosecutions, to bar prosecutions, so that was the terminology that they used. But the rationale, I think as Judge Smith alluded to before, in McIntosh is punishment. In fact, the court does use that word as well. And the point of McIntosh is it does interfere with state law, medical marijuana laws, if the federal government continues to punish individuals for their. So that thing goes to people that are incarcerated. And you would say that we've got to reopen all the prison cases and let everybody who in California has been prosecuted with medical marijuana. And give them new relief, or we can't. Because just open the prison doors and let them out, because we can't afford to feed them. We have no budget to feed them. Not necessarily, Your Honor. That issue is being addressed, I think, to some extent in the Davies v. Benoff case, which was just argued last month before this court. But that's not presented here. In Davies, the conviction sentence were final. It was a motion basically for collateral relief in that case, a habeas corpus petition to be released. And that does raise a thorny question. Does the court have the authority to do that? Very interesting issue and very interesting arguments, but not presented here. Because here we're still on direct appeal. And here the court clearly does have the authority to remand. The court still has the authority to vacate the conviction, vacate the sentence, order reconsideration. What about habeas? What if convicted, appeal final, but he had a habeas? If that was granted, that would give the court, you know, reopen the prison. Does the government not support funds to defend? Well, again, not presented here. I mean, I think that, you know, arguably. But I think the difficulty, the issue those cases present is, you know, what authority does the court have to open, or what is the application in that context to open the prison door essentially? You know, what is that authority? But here, I mean, clearly this litigation is ongoing. Clearly this has not been finally resolved. Well, Mr. Cunningham does have that right. That's the question. My colleague kind of seized on the questions and took it further. The question really is, is this so much different than Davey's? Do I have to wait for Davey's? Who can I preempt Davey's? I mean, what if I said, you've already been convicted and sentenced by the jury. That was all done before 542. All you're doing now is pursuing the appeal. And as far as I'm concerned, 538 does not apply. Well, two-part answer. I don't think the court has to wait for Davey's because this is sufficiently different. I worry because Davey's is really all they did in Davey's different than this is there was a conviction. It was appealed. It was lost. Well, correct. I mean, all before. That's the only difference. Well, but it's a very significant difference, Your Honor. Oh, I understand. That's why I'm kind of pushing you just a little bit. Here we have the conviction. We have the sentence. All we've got is the appeal. The only difference between me and Davey's that I know of, and I'll admit I'm not the most competent on Davey's, again, Judge Evald's going to say don't take what I said as important, kind of like you said in the past case. I'm not going to say that. But all I'm trying to do is I'm trying to just press you just a little bit because at a minimum, that's a big word. That's the question. And punishing individuals and whether the appeal is really that is really the question. Well, certainly the continued incarceration does punish the individual. Continuing incarceration could go all the way along. Sure. Sure. From after the appeal to the next. And I think that's Mr. Davey's argument. My question was do I wait for Davey's or can I make this decision because or can I preempt Davey's and just say once convicted, one sentence, 542 is over? Well, I think this court could, I wouldn't say preempt. I think that would suggest maybe an impropriety, but could. Just to make it seem awful. Right, right. I think the court could preempt it because it is so different from the issue presented in Davey's and so similar to the issue presented in Sikultseve, for example, which is the most recent unpublished decision. Well, the thing is, is that if those, if those, quote, unquote, I'll be another preposterous term, chickens, would have decided that in a published decision, I wouldn't have to make that decision. I don't have to worry about what they said because it won't publish. So I'm, again, on my own and I have to make that decision now. True, but I do think Sikultseve, even if not binding, does reach the correct result. Can I add on to my colleague's question following up on the incarceration issue? Let's assume, arguendo, that we conclude that we want to send this back for a McIntosh hearing. It doesn't violate Davey's. We're just trying to flesh out this law. In the meantime, Mr. Kleinman's in jail. They've argued that he should be released. Isn't that a matter that ought to be determined by the district court in the first instance? Well, that, again, going back to Sikultseve, the court. That's not binding. Exactly, but I do think that the court was, well, it was well-reasoned in that the issue is you can't continue spending funds, right, under the appropriations rider to punish this individual under McIntosh. And that gets into the issue of what the statute means, and we're trying to flesh all this out. Well, I think that question is for this court to determine what does it mean. And if it means he can't continue to be incarcerated until there is such a determination, and I think that's what the court in Sikultseve was reasoning, until you have that determination. I have to go back to my initial question. I asked you whether we needed a McIntosh hearing because we need to determine whether or not your client was in full compliance with California's medical marijuana regime. You agreed. So if he was not, then we have a very different situation because McIntosh says that the new, I'll let the 542 law, doesn't apply if he's not in full compliance. So we have a totally different situation. So if you send it back for a McIntosh hearing and the district judge determines that he wasn't in compliance, then all the Davies' other issues go away. They're just gone because you've got a person who had not complied with California law. He's in violation of federal law, end of story. But if the McIntosh hearing goes on, in the meantime, your client's in jail. And my question to you is, in the interim period, while the hearing occurs and so on, is it something the district court ought to decide whether he should remain incarcerated during that period? Obviously, if he is found to have fully complied, then we run into some of the other problems that my colleagues have pointed out. What is your answer to the question about what happens to his incarceration status? Well, I think this court should order his release because I do think it's a question for this court. It's a legal question. Can he stay incarcerated while this determination is being made? But we don't know whether he has violated the California medical marijuana law. If he did, then he is lawfully incarcerated. There is no problem with McIntosh. He should stay incarcerated, right? There's no reason to let him out of jail. What I'm saying is, until that determination is made, who should make the determination whether there's a circumstance? Shouldn't it be the district court? Why don't we do the actual question? I mean, this is a nuance that I don't think the case is— Are you applying risk? Well, there are some things to be considered. I mean, that was something I was going to add to my good colleague's question. Why is that question any different than the bail question, which I wouldn't make up here? Because I'm not sure it's punishment. We don't know whether it's punishment or not. It might be just a bail question, especially given that he would have a conviction. He would be a different flight risk than he would have been otherwise. Why is that not like a bail question that I ought to send back to the district court to make in the situation? Well, because this is a very unique situation. I understand it's unique, but it's on what I characterize as present incarceration. If I characterize it as punishment, then I might lean toward maybe I need to make the decision. But if I don't characterize it as punishment, I characterize it as I don't know what it is, and therefore maybe it's like a bail. Why wouldn't I send it back to the district court to decide? Well, I think because of the nature of the appropriations action here, that this is the government spending money, and that's the violation in itself, the government. Only under McIntosh if he was in full compliance with the California medical marijuana law. That's why we're hung up on this issue. If it were a given, if it were very clear that the government could not spend money on this, what we'll call 542, then that's a different issue. But here we don't know. We need to find out whether he's violated that law. So in the interim, my colleague and I are questioning why isn't this just like a regular bail hearing? Because he may or may not be in compliance. I gather the government's position is he wasn't in compliance. They don't want it to go back to McIntosh. You originally didn't want it to. My thought is how can it be otherwise because everything hangs on whether he complied. Right. Right. No, I definitely agree with that. I mean, I think that when you look at McIntosh and Sekulteve, I think the rationale, though, is you cannot, the government cannot spend the money unless and until there is this determination regarding state law compliance. Why? You got it backwards. I mean, basically, normally it's their role to prosecute, carry things on. And under the McIntosh case, 542 doesn't even apply unless he has been in compliance with the medical marijuana law. I've sat on a number of cases, not necessarily on the California one, where people have been selling drugs out the back door, clearly not in compliance with some of the state laws that they've been dealing with, and there's no problem with those at all, notwithstanding the existence of this statute. So here we're in kind of equipoise. We don't know. Somebody has to determine that. But is it your position that we have to assume that he was in full compliance and pretend that they can't spend anything until this issue is resolved? Is that your position? Well, Your Honor, I do think that was the direction that McIntosh was going here, which is that you cannot, the government cannot, it is a prohibition, it's a prohibition of Department of Justice activity. So until the government can show that they are not within that prohibition, then they cannot act. So I do believe that now obviously McIntosh allows them to litigate the McIntosh hearing. Right. But beyond that, until they've had that determination, they should be. I'm sure it would take the position they did litigate this, and Kleinman lost. Well. Not only tried. Fine, but he lost. He was convicted. I mean, there were some defenses that he couldn't put together. Right. But nonetheless, he lost. Well, he lost, but he was precluded from litigating the state law compliance issue. So that is why the remand is required. I mean, he did not have any opportunity to litigate that issue. The court made no finding on that because the court precluded the issue. And, in fact, I'll just close this opening with a quote from the court, district court, which indicates exactly why we need the remand. The court said, if we were across the street in state court, this would be hard. Man, we would have a lot of stuff to deal with, whether or not all the intricacies of state law have been complied with. So that's exactly what the court, the district court himself recognizes, this is pre-McIntosh, but recognized that if I had to make that decision, that would be a really hard decision. So that's what he needs to decide. I know we've got a lot of questions. Yes, I've got about three and a half minutes. I'll reserve. Thank you. Great. I'm sure you have some really easy answers, right? Please support, Your Honor. It's David Kowals from the United States. With the court's permission, I'm just going to handle the appropriations rider issue. My co-counsel handled the remaining issues. We had roughly divided it into ten minutes each, but we'll go by what the court needs. With respect to the appropriations rider, Your Honor, when a defendant uses a new statute to prevent the enforcement of a previously entered judgment and sentence, that is a retroactive effect. Wait a minute. I get your point in some things, but there are ongoing expenses. In the past, I get your point, but there are ongoing expenses. Your being here is an expense. Incarceration is an expense. There are all kinds of ongoing expenses, forward-looking. You're not arguing, are you, that that's a retroactive application of the statute? I absolutely am. I'm doing it for three reasons. Remember what they're trying to do here, Your Honor. They're trying to say you can no longer enforce the judgment the district court issued. This person was sentenced to a crime, and under the general savings statute, any diminishment of a punishment, any diminishment of a liability, brings in application of the statute. So these timing issues is exactly what Section 109 was designed to do. You're not making a constitutional argument here, are you, that it's a retroactive application of the statute to the detriment of the defendant? No. You're just applying a basic rule of statutory interpretation, that unless someone says it's retroactive, it's not? That's exactly right, Your Honor. That's exactly right. And there are two bases. One is the general savings statute, which, again, applies not only, as the defendant argued in their reply brief to repeals. As the Supreme Court said in the Dorsey case, it says, case law makes clear that the word repeal applies when a new statute simply diminishes the penalties that the older statute sets forth. Now, nothing can more diminish a penalty than in this case, where the defendant is asking for dismissal of the case, where the defendant is asking for the incarceration to stop. It's clearly a diminishment of a penalty, a liability of a forfeiture. Therefore, there's a retroactive effect. Therefore, as a matter of statutory interpretation, the general savings statute comes in or the general rule against retroactive application of a statute, which is separate and apart. But they both come to the same point, which is unless Congress tells this Court. And what the Court is struggling with is these difficult timing issues. Well, what do we do? This new statute has come up, and we already have a case that's gone forward. We have defendants, most certainly, who are already incarcerated. And going back to Judge Ebell's question, of course the rationale of defendants' argument is that these people would all get a right to end their incarceration. You can't ignore that implication from their argument. Now, I concede that McIntosh did not address these retroactivity questions. Similarly, the Davies case did not, because in those cases the government was focused on the threshold issue decided in McIntosh. Did it apply to prosecutions at all? In this case, we thankfully, you gave us the opportunity for supplemental briefing. As you can see, our initial brief was focused on that same issue. Does the appropriations right apply to prosecutions at all? But because you've given us a chance to supplemental briefing, we're showing if it does apply, as McIntosh says it does, who does it apply to and when does it apply? Is this issue waived by chance? No. It's not? It's not, Your Honor. It's the applicable rule of law, and you've, of course, it was raised by a defendant after the appeals happened. You've asked for briefing on it. No, I didn't just ask it. It is before you, and I would suggest to the court, too. Do you think that waiver is waived if the court asks for briefing on a subject? Well, it certainly can't be waived when the government, first in its opening brief, said that, yeah. You just articulated reasons why it wasn't waived, and one of the reasons was that we asked for supplemental briefing. I was just curious if it is your argument that by asking for supplemental briefing, we somehow have intervened into the process and have abrogated what would otherwise be a waiver. No, Your Honor, I don't think so. There's no forfeiture or waiver here in any case. The government did argue, at least in a very nascent form in its initial brief, that the rider should be applied only prospectively. But, of course, again, following what we thought was a good decision in the Olive case, we thought that the rider wouldn't apply to prosecutions at all, that it would be focused on the authorization of the states. And we lost that argument in McIntosh, but it's fair based on the new law for us to say, well, McIntosh does say it applies to prosecution, but does it apply retroactively? And the answer is no, and all these continuing appropriations do have a retroactive effect because what the case law for the general savings statute says, and that's the Supreme Court case law in Dorsey and a number of Ninth Circuit cases, is it's retroactive if you are diminishing a penalty, if you are changing the liability of a criminal defendant, and that liability goes back to the time of the criminal transaction. That's this Court's decision in the Vandenberg case, which is in the same line. It's in the Dorsey case. That is an interesting argument because ordinarily, if the statute is addressing conduct that individuals can or can't do, you would go back to when that conduct occurred. Yes. This statute is different. This statute is not purporting to regulate conduct of what this defendant did. It's purporting to relate to regulate expenditures on an ongoing, current, real-time basis of the government. So it's quite a different retroactivity analysis than the one you're just postulating. Not exactly, Your Honor, in the sense that by regulating the government's conduct, and we're working on the interpretation of this appropriations rider on McIntosh, when it's saying that it can prevent the government from moving forward with a prosecution, that's the real-world thing that we're dealing with here. If that is the case, then what is the consequence of it for a defendant raising it as a defense? And it goes back to the same principles we have. It is diminishing a penalty or a liability. It has a retroactive effect. It's not. Pardon? Legally, it's not. It doesn't give the defendant a get-out-of-jail card. But it doesn't give him a you're-not-guilty card. Well, that's what they're asking for. And it's certainly giving a suspension of prosecution, a suspension of his criminal sentence. All of these are exactly. . . So you are right. He is asking that you are now hereby declared not guilty, or at least not yet found guilty. And I would say the fact that we can't maintain the appeal is a retroactive effect on the meaning of the original notice of appeal in this Court's normal standing orders for how we look at it. Let me ask you. I thought about that as I was contemplating this because it's certainly a big issue. Can I just say, okay, we'll hold this appeal and remand for this hearing? I don't think you should for two reasons. Well, that would eliminate what you're really saying. No, I don't think so, Your Honor. If there's two reasons. . . I'm not going to eliminate the appeal at that point. It's still on my desk. The judgment is not changed. It's still on my desk. There's nothing that's been changed. I'm just sending it back for this hearing. On what basis? Which McIntosh would suggest I should. You shouldn't do that for two reasons, Your Honor. First, you shouldn't be remanding for a hearing on an appropriations rider that doesn't apply. Before you are the arguments as to whether this rider applies to this case. And it's been well briefed and well joined. It is the correct rule of law as we argue it to you. You should decide that threshold legal argument before you remand based on a statute. . . What says I've got to do that? If I could remand and the district court could say one way or another whether it applies or it doesn't to this particular case. . . I wouldn't have to decide that issue. It would be either done or it wouldn't be done. That's likely untrue, Your Honor. Because the same issue of whether it applies retroactively would still have to be decided. And we've, again, briefed it to you. It's well set and the record is well clear for you. Moreover, as to the remand, there's no . . . As we argued also in our supplemental briefing, this is unlike McIntosh. Not just because McIntosh didn't address the retroactivity analysis. It's also unlike it in terms of its procedural posture. Remember, McIntosh comes to us on an interlocutory appeal. The Selleck-Sabe unpublished case also comes to us based on just a plea agreement. Here you had extensive litigation on the state law issue. And I want to just correct something in the record from the defense counsel's presentation. That quote from the district court comes from the earlier trial phase of the case when he's just talking during the trial. But nothing prevented the defendant after trial from fully presenting any evidence they wanted on the state law issue. And, in fact, they tried to do so. Remember, these further excerpts of record that have been presented to you were presented to the district court at the sentencing phase, showing purportedly that he complied with state law. The district court also heard from the defendant's co-defendant and business partner. The district court heard from his marijuana supplier, who, by the way, was from . . . supplied marijuana from Canada in violation of state law. He heard from his employees. He heard from the person who kept their books. He had before him all the business records that you have now before him. And he found quite clearly at sentencing where there's nothing preventing the defendant from bringing anything they want, including a declaration from the defendant, as they did in the suppression hearing, saying here's what the evidence is. And the district court clearly found that state law did not apply and said it again at bail pending appeal. All those things you've just said, are those all in the record? Yes, Your Honor. Could we look at those things without a further hearing? Yes. And say that on the record, we can determine without a remand that he was not in compliance with state law? Yes, Your Honor. We've argued to that. We could kind of conduct our own McIntyre hearing. You can. And I would say it's even better for the government now because McIntosh had the standard of strictly complied with all applicable state laws, strictly and fully complied. The district court was just making a typical sentencing judgment preponderance of the evidence. There wasn't even that more restrictive requirement for strict compliance. But, again, that would only be if you think that the appropriations writer applies at all. Unless he's contesting those things, those things you just recited, he could arguably say, look, yeah, there's evidence of that in the record, but what's not in the record is my response to those things, and I'm entitled to that under this hearing. Two points to that, Your Honor. One, and I do want to leave some time for my co-counsel, but I do want to address the court's questions. One, as we set forth to you in the brief, he conceded some of his violations of state law. For example, as we pointed out, the exact record citations, he conceded in the district court that when he was selling to known drug dealers in Philadelphia, and I believe it was New York, that that had nothing to do with state law. And even on that fact, given that McIntosh requires strict compliance with all state laws, not with some exceptions, not mostly, not nearly all, fully, completely, based on that concession in the record, no matter what their response is, they've already conceded the point. Counsel, would you in a 28-J letter send the court with citations to the record where you believe that Mr. Kleinman, either directly or through his counsel, conceded violations of the state medical marijuana law? I put that in our supplemental briefing. If there's nothing more, then you can just go to that. I know if that's all you're talking about now is what you put in your supplemental brief, I've got it. Yes, and I will tell you also we did reference in our opening brief some of the additional violations of state law. In the supplemental briefing, I just put the most clear example, the conceded point. So from your perspective, what you put in the supplemental briefing is, in and of itself, enough to clarify that there was not complete compliance with the state medical marijuana regime. End of story. We don't even need to get to the retroactivity issue because either way, he does not, basically the 542 doesn't apply to him. That's correct. You could go that way, although I would respectfully suggest. That's a tough thing to do with McIntosh, don't you think? Not at all, Your Honor. We should make that decision ourselves. Well, no, I guess two points. One, I would urge the court to consider what we believe is the applicable rule of law on retroactivity, which is well joined in front of this court as. . . That would have nothing to do with a hearing. No, that would not be in here. That would suggest we're going to do it on a different basis, simply because we're facing now a trial, a conviction, and a sentence. Correct. So that would be the legal issue, but you can do the factual determination on the lack of compliance with state law under McIntosh, the lack of strict and full compliance based on the record before you, even merely based on the concession. And I've set forth in our supplemental briefing this court's precedence, which shows that McIntosh didn't throw out all this court's precedence on when you needed to evidence your hearing. When the record only has one result, when it's superfluous, then you don't remand. The Selleck-Sabe case, for example, was talking about, if you look at the citations there, it was remanding in cases when, for example, there wasn't a Daubert hearing in the first place, when there was no Franks hearing, cases when the record is totally devoid of any substance on an issue. Here you have substance. But, again, I'm going to leave some remaining time for my counsel. You better do that or you're in trouble. I'm going to be in trouble. Okay. Thank you. She's actually being very patient. I didn't notice a firearm being raised. I'm just kidding. I don't quite know where to begin. Well, it seemed to me that counsel said there were two issues she was definitely going to discuss. One was the issue we've talked about all day. The other was the motion to suppress. So maybe you could start there. Yes. With respect to the suppression motion, the affidavit certainly contained probable cause for the search of the Medco dispensary. And I want to make clear, Your Honor, that ---- It was the omissions that were primarily complained about. Yes. Not false statements, but they didn't state about there being guards and their having proof of their prescription and all that stuff. Actually, Your Honor, all of that was in the affidavit. All right. There was, in a section on night service, there was the notation that there were security guards at the location. Actually, you're saying the omissions she's complaining about weren't omitted. The only thing that was omitted that the defendant complained about was that the detective had to fill out a form for membership that stated that the dispensary was his primary caregiver, which, as the court knows from the briefing, is a known sham in this area. Well, that's a pretty big one. The state law says ---- It's pretty big, isn't it? That it's a known sham? Yes. It actually says that in the Attorney General Guidelines, which are in the record. A patient or customer who goes into one of these medical marijuana stores is not, by signing a piece of paper, able to say that person is his primary caregiver. And the reason for that, Your Honor, is because under the California State Compassionate Use Act, there's a very strict definition of primary caregiver, which has to do with ongoing care for the health, welfare, and safety of the person who is designated the patient. So in this case, and in many cases in California state law, there is no exception for when a person goes into a dispensary and claims that they are turning over the responsibility for primary caregiver to that store. That is not legitimate. So in this case, there were a number of factors. Mangrum nor his partner had any connection with the store. They walked in off the street to purchase marijuana. They asked three times whether there was anything they had to do to participate in the collective. They presented fake IDs and doctor's notes. They had a conversation with a clerk who even said to them, if the state didn't want us to sell marijuana, then why do we have a seller's permit instead of a barter permit? And additional information that was included in the affidavit was that Mangrum and his partners spent approximately 10 days observing the store. The store required members of the collective to designate the store as its primary caregiver. It had a business license. They stated that. And it had security guards. The operator of the store had filled out a hardship application for the city of Los Angeles, and utilities were registered in the name of the state of the store owner. All of that was included in the affidavit. So the mere fact that the affiant left out the specific information that he had to fill out this application for membership in the store is not something that would have caused the magistrate to make a different determination about the validity of the search warrant. Don't they also object to the fact that nobody said the security guard checked their IDs and the doctor's recommendations? That's correct, Your Honor, although it is clear that they had to present doctor's notes and fill out the affidavit. Yes. Don't they also complain that the security guard allowed each to enter the back room and make purchases and nobody said anything about that? Well, they were admitted to the store, yes. That is correct. But that was in the affidavit. In other words, the store is the back room, is what you're saying? The store is the back room, yeah. They were drawing a distinction between the entryway, which is delineated with a wire gate, and the actual store itself. And they even said they went into the store and there were jars of marijuana and there was a clerk there and they had a conversation with him and so on and so forth. Other questions from my colleagues? I think your time is just about up. I realize that you all had a lot to say. We've had a lot to read, so thank you for your argument. Counsel, you have some rebuttal time. Thank you, Your Honor. I'll start with the retroactivity issue raised by Mr. Cole. This is just not a retroactivity issue in this case. This is not a retroactive application. The saving statute doesn't apply. We're not talking about diminishment of punishment. We're not talking about a change in the substantive law. The Controlled Substances Act still exists. Congress recognizes that. It's still out there. The penalties remain. There's been some talk of changing that or reducing the schedule. That hasn't happened as of yet, but instead what Congress has decided to do is say let's hold off. We're going to keep that in place, but DOJ, don't go out and enforce it right now. We're letting the cases of medical marijuana. We're going to let the states act as our laboratory and stop spending funds. The statute does not say that we're hereby saying that you're not guilty of a federal crime if you participate in state-controlled marijuana activities. Exactly. It doesn't quit. It doesn't say you're not guilty. All it says is it doesn't even really say, federal government, you shall not prosecute. What it says is you can't get paid for it. You can't spend money for it. So is that enough for an ultra-virus argument, and does this defendant or any defendant really have standing to bring an ultra-virus argument? Yes, Your Honor. I mean McIntosh. Wouldn't that be just a problem between the prosecutors and getting their checks? No, McIntosh did address that issue, said that the defendants do have standing to raise the separation of power argument and as a challenge to their convictions. I recall that now, yes. Yes. Yeah. I guess I want to address it. I want you to face it. If I were in this particular situation to reverse and remand, it seems to me at that point you're suggesting that the defendant is not guilty, that the defendant should be able to be free, not have any problem, and yet you suggest that the General Savings Statute does not apply. If I look very carefully at the language of the General Savings Statute, if I'm reversing and the defendant is now not guilty and he's allowed to go free, I don't know how I can't apply, I don't know how not to be applying the law such that the General Savings Statute does not come into practice. It's not that he's not guilty. I mean this statute has nothing to do with his substantive guilt or innocence, and the argument about his being released. Well, but I'm going to reverse. I'm going to take away this judgment. I'm going to take away this sentence. You're even arguing I must, as a part of my decision, keep him from any punishment which will be that he has to stay in jail now during the hearing, until the hearing, all of that. I mean when I read the General Savings Statute and I tried to look how it would be applied, I said to myself, under statutory interpretation, I'm having a tough time knowing why this isn't a violation. Well, Your Honor, I mean I think it remains to be determined in the McIntosh hearing whether this prosecution can go forward. But regardless of that outcome. If that's really what you're saying, if that's really what you're saying, and they go back and they say, then why am I worried about whether he's in jail or not, if all we're worried about is going back and having a hearing? Because the only way you make your argument that I ought to get him out of jail is that now he's not guilty. Not exactly, Your Honor. Actually, it's because of the appropriations rider and its effect. They are spending money. The Department of Justice is spending money every day of his incarceration. In fact, they're spending the money on the jail. Right. Right. So if they go back and have this hearing, if they're going to have a new trial, if he's found to have violated California law? I'm sorry, say that again? If he's found to have violated California law in the McIntosh hearing, do they have to have a new trial? No, not on that ground. If he's not in compliance with state law, then I think the conclusion would be the rider does not apply. I mean, we would presumably appeal that determination, but they would not have to then retry the case. Now, their conviction could stand on this ground. I mean, we still obviously would ask for reversal on the other grounds, including the motion to suppress. I am out of time. As long as the court is asking you questions, it's okay. I'm through. You all done? Do you have any other questions? I guess you are done. Okay. Thank you, Your Honor. We thank all counsel for their arguments. It's been very, very helpful. The case just argued is submitted, and the court stands in recess for the day. All rise.
judges: Ebel, M. Smith, N.R. Smith